**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PAUL JOHNSON, | |
| Plaintiff, | |
| | Case No. 21 C 1939 |
| v. | |
| | Hon. LaShonda A. Hunt |
| RIDGE TOOL MANUFACTURING COMPANY, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paul Johnson sustained severe injuries while operating a RIDGID K-6200 drain cleaning machine ("subject machine") at his workplace. He sued the machine manufacturer, Defendant Ridge Tool Company (incorrectly identified as Ridge Tool Manufacturing Company, Inc.) in state court, asserting claims for negligence (Count I), product liability (Count II), and failure to warn (Count III). Defendant removed the case to federal court based on diversity jurisdiction under 28 U.S.C. §1332. Currently pending before the Court are Defendant's motions to exclude the expert reports, opinions, and testimony of Chad Jones and Cynthia Rando (Dkt. 55), as well as Defendant's motion for summary judgment on all counts of the complaint (Dkt. 56). For the reasons discussed below, Defendant's motions are granted in their entirety.

**BACKGROUND**

The undisputed facts are straightforward and gathered from the parties' Local Rule 56.1 statements. Defendant designs and manufactures the subject machine, which has a 5/8-inch

1

rotating cable that operates using a 4/10 horsepower universal motor, with a drum capacity of 100 feet of cable and is pictured below:



(Dkt. 64-8). The catalog sheet describes it as a "drum style drum cleaner [that] provides the professional with a powerful yet compact machine for cleaning 3" to 6" drain lines. Superior maneuverability and a small footprint allow easy access to light work areas." (Dkt. 64-1 at 1). The rotating cable can be extended by hand or through the auto feed feature by using an optional front guide hose that can be purchased for use with the subject machine. Gloves provided with the subject machine come in one size. Finally, a warning label affixed to the subject machine states that users must read the operators manual to reduce the risk of injury and wear RIDGID drain cleaning gloves, among other things. (Dkt. 63-2).

On August 17, 2019, Plaintiff, who worked at Northwestern Memorial Delnor Hospital, was operating the machine while wearing a glove on his right hand that had been provided by his

employer. This particular glove was recommended for use with the subject machine by an industrial supply seller; it was not the standard glove supplied by Defendant. Plaintiff described the glove he was wearing as being "a little large." While using the subject machine, the cable caught Plaintiff's right hand and the glove, twisting and injuring his right arm, hand, and shoulder. Plaintiff admits that he never read the user manual before using the subject machine but states that he did see the affixed warning label.

Plaintiff brought this lawsuit contending that Defendant manufactured an unreasonably dangerous and defective machine without an appropriate fixed guard that would have prevented Plaintiff from having to hold a rotating cable in his hand that could suddenly twist and kink and pull him. Plaintiff also challenged the adequacy of Defendant's warnings and argued that personal protective equipment (PPE) was insufficient to protect users from the known hazards associated with this type of drain cleaning machine. In support of his claims, Plaintiff relies on two experts, Chad Jones, a mechanical engineer, and Cynthia Rando, a certified human factors professional. Following the completion of discovery, Defendant moved to exclude the reports, opinions, and testimony of both experts. And if that motion is successful, Defendant argues, summary judgment must be granted in its favor because Plaintiff cannot prevail on his product liability claims without their expert testimony.

## DISCUSSION

### I.  Defendant's Motion to Exclude Experts

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's landmark decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Specifically,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In other words, an expert opinion is admissible only if the expert is qualified and his testimony is both relevant and reliable. 509 U.S. at 589; *see also Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (for expert testimony to be admissible, witness must be qualified as an expert by knowledge, skill, experience, training, or education, expert's reasoning or methodology underlying testimony must be scientifically reliable, and testimony must assist trier of fact to understand the evidence or to determine a fact in issue).

While there is no definitive checklist for courts to follow in analyzing the admissibility of expert testimony, *Daubert* identifies the following non-dispositive guideposts: (1) whether the expert's theory or technique can be and/or has been tested; (2) whether the expert's theory or technique has been subjected to peer review and publication; (3) the known or potential error rate; and (4) general acceptance of a theory or technique. *Daubert*, 509 U.S. at 593-94. This inquiry is flexible, and "[t]he focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594-95. In sum, when it comes to expert testimony, the district court's job is to act as a gatekeeper, ensuring the admission of reliable, relevant testimony from qualified experts only.

### A.  <u>Chad Jones</u>

Jones is a Certified Machine Safety Expert who is licensed in seven states and has worked

as an engineer since 1996. After inspecting the subject machine and reviewing certain materials,

Jones opined as follows:

> ➤ A technically and economically feasible guard for the hazard associated with the
> rotating motion of the drum machine cable exists in the form of a coil spring type
> guard, eliminating the need for an operator to hold the cable with a gloved hand.

> ➤ The Ridgid K-6200 left the factory without any form of guarding for the hazard
> associated with the rotating motion of the cable, instead relying on information for
> use and PPE.

> ➤ This lack of a suitable guard when it left the factory required Plaintiff to hold the
> rotating cable in his hand, resulting in the injury he received.

> ➤ Defendant did not act as a reasonably prudent designer and manufacturer of
> machinery when they elected to design and manufacture the K-6200 drum machine
> without a guard to protect the user from the known hazard associated with the
> rotating cable.

> ➤ Plaintiff was wearing personal protective equipment (PPE) provided to him by his
> employer while he was utilizing the drum machine to clean the drain. Having his
> hand on the cable while advancing it into the clean out opening is a foreseeable
> action considering the instructions to keep a hand on the cable to control it while in
> use. His actions were reasonably foreseeable over the life of the product.

(Def.'s Resp. to PSOF ¶11, Dkt. 70).

An example of a drain cleaning machine with a coil spring guard is pictured below:



(Dkt. 64-9).

Defendant challenges Jones's qualifications to render those expert opinions as well as the reliability of his opinions. The Court finds that while Jones is qualified to opine on the subject matter in this case, his opinion is unreliable and thus inadmissible.

### i. Qualifications

Rule 702 makes clear that a witness may be qualified to offer an expert opinion by knowledge, skill, experience, training, *or* education. In determining whether this standard is met, courts ask "not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010); *see also Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.").

Defendant argues that Jones is not qualified because, despite being a mechanical engineer, he does not have any experience with the machine at issue or with drum-style drain cleaning machines generally. (Def.'s Memo in Supp. at 3-7, Dkt. 55). Defendant also contends that Jones's purported experience with guarding mechanisms as they relate to industrial machine presses bears no relation to this case as a machine press is entirely different from a drum-style cleaning machine. (*Id.*) In response, Plaintiff argues that Jones "far exceeds" the 702 threshold since he previously worked in accident investigations engaging in root cause analyses and determining preventative measures generally involving "proper guarding and training." (Pl.'s Resp. at 5-8, Dkt. 66). In addition, Jones has previously addressed deficiencies in machine guarding and has designed measures to ensure safe operation of machines by employees. (*Id.* at 6-7). Finally, Jones testified that he has served as an engineer of record for plumbing systems which involved doing design work. (*Id.* at 7).

While Jones's personal experience with drain cleaners is limited, and he is not familiar with the subject machine, his professional experiences qualify him to opine here. "The requirement that an expert be qualified by knowledge, skill, experience, education, or training should not be viewed as being particularly rigorous. A witness may qualify as an expert even if the opposing party can point to deficiencies in his or her qualifications." *Traharne v. Wanye/Scott Fetzer Co.*, 156 F. Supp. 2d 697, 706 (N.D. Ill. 2001). Jones is certified as a machinery safety expert and has worked in the area of machine safeguarding since March 2019. (Decl. of Eric W. Matzke, Ex. 6, at 3, 5; Dkt. 57-6). True, he may not have actual experience with the particular machine in this case, but he need not be the best expert in the field in order to be qualified. *Alexander v. Mount Sinai Hosp. Med. Ctr. of Chi.*, No. 00 C 2907, 2005 WL 3710369, at *4 (N.D. Ill. Jan. 14, 2005) ("Courts have not required a party to show that the witness is an outstanding expert, or to show that the witness is

well-known or respected in the field; these are generally questions of weight, not admissibility.").
As the Seventh Circuit has noted, "[d]eterminations on admissibility should not supplant the
adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents
through cross-examination." *Gayton*, 593 F.3d at 616. The Court is therefore satisfied that Jones
possesses the necessary qualifications to offer expert testimony in this case.

### ii. Reliability

Defendant argues that even if Jones's qualifications pass muster, his opinions are
nonetheless unreliable because he failed to perform any testing of his purported reasonable
alternative design. Jones opined that Defendant was required to include a fixed guard over the
rotating cable to prevent injury. It is undisputed that Jones did not engage in any physical testing
of the proposed alternative nor did he conduct any mathematical calculations or models. (Def.'s
Memo. in Supp. at 8-10; Pl.'s Resp. at 8-11). Indeed, Jones concedes that he has not spoken to any
users of the equipment or industry professionals nor did he design or test his own fixed guard or
physical prototype, use a computer program to design or simulate a fixed guard, perform
calculations or drawings to demonstrate how an alternative guard would fit onto the machine, take
an exemplar guard and try to apply it to the machine, or perform calculations, modeling, or other
analysis to assess if an alternative guard would impact the speed or ability of the cable's rotation.
(Def.'s Memo in Supp. at 8-10 (citing Jones's deposition testimony)). Plaintiff counters that testing
was unnecessary because the industry standard has already created the fixed guard requirement to
avoid injury, and the lack of testing goes to the weight of Jones's opinion, not its admissibility.
Upon review of the record and the relevant authority, the Court concludes that Defendant has the
better argument.

Plaintiff's contention that Jones need not test his alternative design is premised upon his assumption that the fixed guard is an "industry standard." On this point, Plaintiff claims that three of Defendant's competitors use a fixed guard and thus the Court should presume this is what the industry requires. But that is too great of a leap in logic. For example, Jones does not identify the total number of drain cleaning manufacturers in the marketplace; as such, it is unclear to the Court if three is sufficient to constitute even a majority. Plaintiff himself even alludes to the fact that other manufacturers do not use the fixed guard that he maintains is standard in the industry. (Pl.'s Resp. at 8). Indeed, there is no evidence in the record that Jones has ever seen in person—much less inspected—a comparable drain cleaning machine with a fixed guard. The Court therefore declines to accept Plaintiff's conclusory assertion that use of a fixed guard is the design standard for the industry.[1]

Furthermore, Plaintiff's reliance on *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, No. 3:08-CV-436, 2012 U.S. Dist. LEXIS 188434, at *35 (N.D. Ind. Nov. 5, 2012), is misplaced.[2] The district court there agreed with the magistrate judge in allowing the opinion of an expert witness in the absence of testing for an alternative design. *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, No. 3:08-CV-436, 2013 WL 3013531 (N.D. Ind. June 17, 2013). As the court explained, lack of testing can be overcome where "the expert has adhered to the standards of intellectual rigor that are demanded in [his] professional work." *Id.* at *19 (internal quotations and citations omitted). There, the "retrofit alternative design had been constructed and tested," the

---

[1] Plaintiff cites to Jones's report as stating the "industry standard applicable here is a fixed guard that protects the user's hand from a rotating cable spinning 285 revolutions per minute," but ECF 57-6 at 46 does not say that. (Pl.'s Resp. at 8). Similarly, Plaintiff's reference to a "generally accepted design theory set forth by ANSI and ISO" is not found in Jones's report at ECF 57-6 at 46. (Pl.'s Resp. at 5).

[2] Plaintiff cites the Magistrate Judge's report and recommendation, not the District Judge's final opinion which included additional analysis and adopted the R&R in its entirety. Regardless, neither ruling broadly held, as Plaintiff suggests, that no testing is required where an alternative design is in service in the market.

expert personally observed "component parts of different [product] models, garnered after thousands of hours examining [product] designs," and the proposed design used the same concept as another design in the market which was "purportedly used by the majority of today's [product] manufacturers." *Id.* It was "under these circumstances" that the district court concluded the expert's failure to test did not necessitate exclusion of his opinion. *Id.*

In contrast, Jones did not conduct any type of analysis that would make up for his lack of testing of the proposed alternative design. While Plaintiff contends that Jones included detailed designs, an economic study, preliminary drawings, and his own risk-utility testing, the Court does not find that information on the cited references at ECF 57-6 at 72, 115, 118, 131, or anywhere else in the report. (Pl.'s Resp. at 10). Plaintiff's comment that Jones is not "required to see how many volunteers are maimed like the Plaintiff through his own testing" misses the mark. (Pl.'s Resp. at 8). Indeed, *Lapsley v. Xtek, Inc.*, the case Plaintiff himself cited in support of this proposition, clearly states that "[a] mathematical or computer model is a perfectly acceptable form of a test." 689 F.3d 802, 815 (7th Cir. 2012). But Jones did not utilize either type of model here, explaining instead that this case presents "more of a qualitative kind of deal." (Def.'s Memo. in Supp. at 9 (citing Jones's deposition testimony)). Simply put, Plaintiff has failed to show that Jones relied upon any accepted methodology in reaching his conclusions.

In *Cummins v. Lyle Indus.*, the Seventh Circuit highlighted the considerations that must inform a court's decision about admission of expert testimony in alternative design cases. 93 F.3d 362 (7th Cir. 1996). Specifically, these factors include, but are not limited to:

> the degree to which the alternative design is compatible with existing systems and circuits; the relative efficiency of the two designs; the short- and long-term maintenance costs associated with the alternative design; the ability of the purchaser to service and to maintain the alternative design; the relative cost of installing the two designs; and the effect, if any, that the alternative design would have on the price of the machine. Many of these

considerations are product- and manufacturer-specific, and most cannot be determined reliably without testing.

*Id.* at 369. None of these details were provided by Jones, further underscoring the unreliability of his testimony. Jones admits that he failed to test a fixed guard on the subject machine, leaving unanswered the question of whether that mechanism is compatible with Defendant's product. Jones sheds no light on whether the subject machine is as efficient with the fixed guard or on any relative costs to Defendant related to implementation, service and maintenance of machines with such a fixed guard, or even the price point at which Defendant could sell that product. Significantly, Plaintiff fails to address the risk that a fixed guard may inhibit a user's ability, tactile or otherwise, to sense feedback from the hose. With so many unanswered questions here, it is guesswork as to whether a fixed guard would make a drain cleaning machine safer. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) (holding that the case, in which an alternative design to a forklift was not tested, demonstrates why the considerations in *Cummins* are "crucial," because "[i]n some environments, the record suggests that [the alternative design] could exacerbate injuries"). Consequently, Jones's opinion would not assist the trier of fact on this technical issue.

Notably, the plaintiff in *Cummins* argued that no testing or further assessment was necessary because others had already incorporated the expert's proposed alternative design. 93 F.3d at 368. The Seventh Circuit was unpersuaded. Thus, to the extent Plaintiff maintains that a fixed guard is generally accepted, another factor *Daubert* instructs courts to consider, that argument fails for all the reasons discussed *supra* regarding the lack of information provided about the industry. At a minimum, Plaintiff seems to suggest that the availability of an optional front guide hose that can be attached to the subject machine shows that Defendant recognizes the need for a fixed guard. (Pl.'s Resp. at 14). Defendant's proposed expert, John Smyth, explained that "use of the guide hose for the front of the machine is recommended when the machine is further

than three (3) feet away from the sewer opening." (Dkt. 57-4 at 7). However, as Smyth pointed out and Jones does not appear to dispute, Plaintiff was well *within* 3 feet of the sewer inlet, where use of the forward guide hose would not have been possible. As such, even that theory is unsupported on these facts.

Accordingly, the Court finds that Jones's opinion, report, and testimony is excludable under *Daubert* and FRE 702.

### B. <u>Cynthia Rando</u>

Rando is a certified human factors professional who has worked in the human factors field for approximately twenty years. After reviewing certain materials and taking Plaintiff's hand measurements, she opined as follows:

> ➢ The primary root cause of the incident involving Plaintiff and the K-6200 Drain Cleaning machine was failure to effectively address hazards created by the design and operation of the K-6200 Drain Cleaning machine through standard design controls.

> ➢ Defendant demonstrated negligence through their failure to effectively assess and control risk and the violation of accepted standards of practice pertaining to risk management and the design for human safety.

> ➢ Additionally, the failure to provide the correct personal protective equipment (PPE), including unsafe recommendations made by Defendant to utilize a "one size" glove that allowed for a loose fit for individuals representing a smaller anthropometric hand size range, introduced unacceptable added risk and significant potential for injury.

> ➢ The reliance on the user manual to provide the necessary information regarding safe operation of the device by Defendant and the expectation that the manual was the hazard control method was negligent. This approach passed the responsibility of safety to the end user despite the awareness of the potential for significant injury based on the design of the equipment and recommended method of operation.

> ➢ The user manual was not written in an easy-to-understand manner, including conflicting safety instructions and recommendations for postures that would create increased risk of injury to the operators.

> ➤ The manual violated ANSI Z535 standards and recommended unsafe operations to the end users but advertised them to be "safe."

> ➤ Collectively, these issues represent the root cause and contributing factors to the injury incurred by Plaintiff on August 17, 2019.

(Def.'s Resp. to PSOF ¶21). Unlike with Jones, Defendant does not contest Rando's qualifications. Instead, Defendant argues that Rando's opinions on the user manual are irrelevant to the causation analysis and unreliable because she failed to either offer or test any reasonable alternative warnings. In response, Plaintiff does not appear to dispute that Rando would not be permitted to offer an expert opinion about the user manual. Instead, Plaintiff contends that Defendant "overly ignores the totality of her opinions in an attempt to select snippets of her testimony that has no bearing on any exclusion factor for *Daubert* but is fodder for cross-examination." (Pl.'s Resp. at 11-12). More specifically, Plaintiff asserts that Defendant fails to acknowledge Rando's opinion about the warning label affixed to the machine and that Rando need not have proposed alternative instructions for her opinion to be reliable. The Court agrees with Defendant.

First and foremost, it is undisputed that Plaintiff did not read the user manual prior to operating the machine. (Pl.'s Resp. to DSOF, ¶ 4, Dkt. 63). Therefore, any opinion from Rando related to the user manual is irrelevant and therefore inadmissible. (Def.'s Memo. in Supp. at 12-13). Perhaps recognizing that obstacle, Plaintiff emphasizes Rando's opinions about the warning label affixed to the machine, which he suggests is distinct from the user manual. However, after reviewing Rando's expert report, the Court concludes that, contrary to Plaintiff's assertion, Rando did not offer a specific opinion about the adequacy of the warning label. Indeed, her opinions as to "Caution and Warnings" are couched in the context of analyzing the user manual which, as noted, Plaintiff did not read.

Plaintiff insists, though, that warnings need not be read "when they are inadequate and could not capture Plaintiff's attention . . . ." (Pl.'s Resp. at 14) (citing *Williams v. Genie Indust.*, No. 3:04-CV-217 CAN, 2006 U.S. Dist. LEXIS 32292, at *12 (N.D. Ind. May 19, 2006)). *Williams*, relying upon *Indiana* law, stated that "if the warnings are inadequate and the labels fail to capture the user's attention, failure to read them does not bar the claim as a matter of law." *Id.* at *12. But Plaintiff ignores the fact that Indiana law is not applicable here and Rando never addressed whether the warning label affixed to the machine was inadequate or failed to capture Plaintiff's attention. Because her opinion focused solely on the user manual Plaintiff never read, it is not relevant.

Even if the Court did interpret Rando's opinion as encompassing the warning label, her failure to draft or test any proposed alternative warnings still renders any such opinion unreliable. (Def.'s Memo. in Supp. at 13-14 (citing Rando's deposition testimony)). *See Bourelle v. Crown Equipment Corp.*, 220 F.3d 532, 538-39 (7th Cir. 2000) (upholding exclusion of expert opinion on alternative warning because his "failure to even draft a proposed alternative warning for the [product's] operation manual renders his opinion regarding the alleged inadequacy of [defendant's] existing warning concerning the risk [of the harm] unreliable. . . . [and] akin to 'talking off the cuff' and not acceptable methodology.'").

Last, Plaintiff points to Rando's opinion on personal protective equipment (PPE) that Defendant's standard one size fits all glove—which Plaintiff admittedly did not use here—was unsafe, but that has no bearing on his failure to warn claim. In the end, these "unsafe recommendations" were included in the user manual, which, as already discussed, Plaintiff never read. Therefore, her opinion on PPE is similarly irrelevant.

Accordingly, the Court finds that Rando's report, opinions, and testimony are excludable under *Daubert* and FRE 702.

14

## II.   <u>Defendant's Motion for Summary Judgment</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfy these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim. . . . If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). The non-moving party receives the "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence" that are justifiable. *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022)). Moreover, courts must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

### A.   <u>Negligence and Product Liability (Counts I and II)</u>

In actions for both negligence and product liability, Plaintiff must prove that a product is unreasonably dangerous. *See Baltus v. Weaver Div. of Kidde & Co., Inc.*, 199 Ill. App. 3d 821, 834 (1st Dist. 1990) (holding that "[i]n products liability actions, a manufacturer has a nondelegable duty to produce a product that is reasonably safe" and the distinction between product liability and negligence is not the dangerous nature of the product but the additional consideration of the fault

15

of the defendant (as required for negligence)); *Phillips v. U.S. Waco Corp.*, 163 Ill. App. 3d 410, 417 (1st Dist. 1987) ("In Illinois a manufacturer is under a nondelegable duty to produce a product that is reasonably safe. . . . the breach of duty is the same in both a negligence and strict products liability claim."). Whether the product is unreasonably dangerous is a threshold question in both product liability and negligence actions. *Baltus*, 199 Ill. App. 3d at 830. "In order to evaluate [a] product's dangerousness, the plaintiff must provide some evidence that the manufacturer: (1) deviated from the standard of care that other manufacturers in the industry followed at the time that the product was designed; or (2) knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and that it failed to warn of the product's dangerous propensity." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 501 (1st Dist. 2010).

The present case is one particularly well suited for expert testimony. *Baltus*, 199 Ill. App. 3d at 834 ("Products liability actions . . . often involve specialized knowledge or expertise outside the layman's knowledge. Manufacturing negligence resulting in an unreasonably dangerous product seems particularly appropriate for expert opinion."). While expert testimony is not required in every case, it is necessary in this case because absent testimony from experts like Jones and Rando, a jury would be left to speculate that the machine was unreasonably dangerous simply because it did not attach a fixed guard. *See id.* at 836.

In arguing that a defect in Defendant's design may be proven using the consumer expectation test and risk utility test under Illinois law, Plaintiff relies solely on his expert's opinions which this Court has now deemed inadmissible. (Pl.'s Resp. at 5-8). Even so, Plaintiff fails to address the consumer expectation test beyond identifying it. Nor does he offer evidence as to the benefits of the Defendant's design as required under the risk utility test. *See Show v. Ford Motor*

*Co.*, 659 F.3d 584, 585 (7th Cir. 2011) (risk utility test requires that inherent risk of danger outweighs any benefits of the challenged design). Without admissible evidence to show that the subject machine was unreasonably dangerous, Plaintiff fails to establish his negligence and product liability claims, and they fail as a matter of law.

### B. <u>Failure to Warn (Count III)</u>

Plaintiff's final claim is that Defendant failed to warn consumers of the unreasonably dangerous condition of the machine. A failure to warn claim requires proof of proximate causation. *See Phillips v. The Raymond Corp.*, No. 99 C 2152, 2006 WL 1156375, at *7 (N.D. Ill. Apr. 25, 2006) (holding that under theory of strict liability, "failure to warn is the proximate cause of an injury only if the plaintiff demonstrates that he would have read and followed an adequate warning, and that the warning would have prevented his injuries."); *Kane v. R.D. Werner Co., Inc.*, 275 Ill. App. 3d 1035, 1037 (1st Dist. 1995) (holding proximate cause is necessary under negligent failure to warn claim).

In *Kane*, the Illinois Appellate Court held that "a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it." 275 Ill. App.3d at 1037. The same is true here. Plaintiff urges the Court to consider the fact that his employer kept the manual in a closet rather than tethered to the machine; however, *Kane* makes clear that inadequacies refers to situations where the manual failed to include symbols (such as a skull and crossbones) for users who may not be able to read the English language or included a warning that was not prominent enough to grab a user's attention. *Id.* at 1036. (quotations and citation omitted). Plaintiff has not put forth evidence of the sort that would create a triable issue of fact on this point.[3]

---

[3] And Rando did not opine that any inadequacy prevented Plaintiff from reading the user manual in the first place.

Even with respect to the warning label on the machine that Plaintiff said he did read, the record does not contain any admissible evidence that the warning was inadequate or an alternative warning would have been better. Plaintiff insists that "Defendant did not adequately warn to avoid touching the cable, and did not instruct the Plaintiff to use with the front guide tube attached." (Pl.'s Resp. at 11). "The failure to warn of a product's dangerous propensities may serve as the basis for holding the manufacturer or seller strictly liable in tort," as "[a] product with inherent dangers may be found defective and unreasonably dangerous to the user or consumer if the manufacturer . . . fails to adequately warn of the potential risks or hazards associated with its use." *Hammond v. N. Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983). Even so, Rando never opined on these particular topics in connection with the warning label, and, as Defendant points out, the warning label instructed users to read the user manual, which Plaintiff admittedly failed to do.

Further, Plaintiff offers no other evidence of an alternative warning which he would have read and followed it. *See Phillips*, 2006 WL 1156375, at *8 (holding plaintiff's strict liability failure to warn claim failed because plaintiff "failed to suggest a different warning that would be adequate or even better; and has failed to identify a warning that would have caused him to have acted differently or would allegedly have prevented the injury he suffered. Under appliable precedent, a failure-to-warn claim, including one predicated on a strict liability theory, fails under such circumstances."). Put simply, Plaintiff has not supported his failure to warn theory, regardless of whether it is grounded in negligence or strict liability. As a result, the failure to warn claim fails as a matter of law.

Having excluded Plaintiff's experts, Plaintiff has not met his burden of coming forward with admissible evidence that the machine was unreasonably dangerous or Defendant failed to warn users of any potential dangers. Accordingly, Defendant is entitled to summary judgment.

**<u>CONCLUSION</u>**

For all the foregoing reasons, Defendant's motions to bar the testimony of Plaintiff's expert witnesses is granted, and Defendant's motion for summary judgment is granted. Judgment will be entered in favor or Defendant.

**DATED**: August 22, 2025                    **ENTERED**:

LaShonda A. Hunt
United States District Judge